UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KURT CHARLES MECHLER, D.C.,

                Plaintiff

        v.                                    C-1-02-948

R. W. HODGES, *et al.*,

                Defendants

## ORDER

This matter is before the Court upon the Report and Recommendation of the United States Magistrate Judge (doc. no. 95), defendants' objections (doc. no. 98), plaintiff's reply (doc. no. 101), plaintiff's objections (doc. no. 102) and defendants' response (doc. no. 103).  The parties object to the Judge's Report and Recommendation on the grounds that his findings are contrary to law.

### REPORT AND RECOMMENDATION

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

2

that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Satterfield*, 295 F.3d at 615; *Little Caesar Enterprises, Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000). The moving party must demonstrate the absence of genuine disputes over facts which, under the substantive law governing the issue, could affect the outcome of the action. *Celotex Corp.*, 477 U.S. at 323.

In response to a properly supported summary judgment motion, the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). "[A]fter a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. The trial court need not search the entire

record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## FACTS

Pro se plaintiff Kurt Charles Mechler, D.C. (Mechler) is employed by Health Plus Medical Management, Inc., a physical medicine rehabilitation facility located at 792 Eastgate South Drive, Suite 250, Cincinnati, Ohio. (Mechler Depo. 14–15).[1] Health Plus Medical Management, Inc. leased property at 207 Garfield Avenue in

---

[1] During the course of his deposition, plaintiff objected to virtually all of the questions posed by counsel for defendants before answering the questions. Plaintiff made a statement prior to the start of questioning that he, "Kurt Charles Mechler, D.C., in that specific capacity" objected "to any representation, implied or explicit, that any other person is present testifying and make further standing objection to any questions not relevant to settle the issue of the amount of damages as the issue of liability is uncontroverted. . . ." (Mechler Depo. at 7). Unless otherwise explicitly stated by plaintiff in response to specific questions posed by counsel, the Court understands the continuing nature of his objections to be on the basis of relevancy. Plaintiff's objections on the basis of relevancy are overruled unless otherwise stated by the Court in this Report and Recommendation and only to the extent the Court cites to plaintiff's deposition testimony in this Report and Recommendation.

the City of Milford, Ohio.  Mechler, "[i]n the capacity of corporate officer" but "[n]ot in the capacity of Kurt Charles Mechler, D.C." signed the lease agreement[2] on behalf of the Society of Life & Health Enhancement, a corporation with which Mechler is associated.  The Society of Life & Health Enhancement leased space to Health Plus Medical Management, Inc. (Mechler Depo. at 120–21, 182).  Health Plus Medical Management, Inc. had paid administrators working at that Milford location. (Mechler Depo. at 241–42).

Carol Woerner serves as the Tax Administrator for the City of Milford and administers the City of Milford's tax ordinance. (Woerner Depo. at 10, 33). Violations of the City of Milford's tax ordinance are prosecuted in the City's Mayor's Court. (Woerner Depo. at 33).  Individual residents, businesses, and employers within the City of Milford are required to comply with the City's tax ordinance. *Id.*  Pursuant to the tax ordinance, the landlord for the Milford property leased by the Society of Life & Health Enhancement gave Woerner the name of a person, Mechler, who had signed a lease. (Woerner Depo. at 96).  Woerner believed that business was being conducted at 207 Garfield Avenue and that Milford tax may be owing.

On September 28, 2000, Woerner issued a subpoena duces tecum from the City of Milford Income Tax Department to "Curt Mechler, Health Plus Medical Inc.,

---

[2]Mechler testified he signed the lease agreement not in the capacity of "Kurt Charles Mechler, D.C." but as "Kurt Charles; Mechler (overseer)" in the "separate identifiable capacity, function as overseer of the Society of Life and Health Enhancement of the Office of Presiding Patriarch." (Mechler Depo. at 178, Exh. C).

792 Eastgate South Drive, Cincinnati, Ohio 45245–1500" with the subject line "RE: 207 Garfield Avenue."  The subpoena duces tecum was returned to the sender by mail clerk Angela Brownfield by letter dated September 28, 2000  with the following information:

> The only authorized use of this address is to licensed professionals in that capacity or to specific corporation appropriately addressed.
>
> The address is not to be utilized by anyone for private matters.
>
> Please correct your records.
>
> > "Health Plus Medical Management, Inc.
> > 792 Eastgate S Dr #250
> > Cinti, OH 45245–1563"

(Woerner Depo. Exh. FF2–7).

Mechler states that he has never been known as Curt Mechler, has never been the agent authorized by appointment or by law to receive service of process for a corporation by the name of Health Plus Medical, Inc., and has never been an officer or managing or general agent of a corporation named Health Plus Medical, Inc. (Doc. 64, Mechler Aff.).

Woerner issued another subpoena duces tecum on November 17, 2000 from the City of Milford Income Tax Department to "Curt Mechler, Health Plus Medical Inc., 792 Eastgate South Drive, Cincinnati, Ohio 45245–1500."  This subpoena omits a subject matter reference and does not list any Milford property in the body of the subpoena. (Woerner Depo. Exh. FC2–3).  The subpoena ordered that the subject appear at the office of the Tax Administrator in Milford, Ohio with

specified tax documentation for the year 1999 on December 6, 2000 at 2:00 p.m. *Id*. Woerner based her decision to subpoena Mechler because he signed the lease for 207 Garfield Avenue. (Woerner Depo. at 108). Woerner then accessed Mechler's social security number through a credit bureau to verify she had properly identified Mechler. (Woerner Depo. at 113–14, 117). Mechler alleges Woerner improperly accessed his motor vehicle records to obtain and disclose his social security number. (Doc. 70, attachment).

On November 21, 2000, defendant Ralph D. Hodges, a Milford Police Officer, was assigned as part of his regular duties that day to serve the November 17, 2000 subpoena issued by Woerner. (Hodges Depo. at 11). Hodges and Milford Officer Thomas had been instructed to serve the subpoena on a "Curt Mechler" at the address given on the subpoena. When they arrived, Thomas took the subpoena with him and entered the building while Hodges waited in the squad car. *Id*. Hodges waited in the vehicle until he learned that Mechler's office staff told Officer Thomas they did not know whether Mechler was in the office. Hodges entered the office and was informed by the staff that the officers were interrupting the business there. *Id*. Hodges advised the staff member they were there to serve a subpoena and leave. The officers were escorted into a private room where they waited for a few minutes. Mechler arrived with another man operating a video camera. (Hodges Depo. at 12). Mechler introduced himself as "Dr. Mechler" and Hodges showed him the subpoena. Mechler denied being the individual named in

the subpoena and advised Hodges that there was no Health Plus Medical, Inc. at that location. (Docs. 57, 58).  Hodges testified at his deposition that he asked Mechler for identification, but Mechler refused to provide any. (Hodges Depo. at 12).  The videotape provided by Mechler shows no such discussion. (Docs. 57, 58). Hodges proceeded to read the content of the subpoena to Mechler, while Mechler interrupted on several occasions stating "that's not me" and stating, "I am Dr. Kurt Charles Mechler, capital K, lower case u . . ." and proceeded to spell out his name. (Docs. 57, 58).   After reading the subpoena, Hodges placed the subpoena down on a table and  told Mechler "You've been served" and "I'll be back on December 7th Doc." *Id*.  Hodges testified that he could not recall whether he spoke with anyone about Mechler's objections to the subpoena upon returning to the City of Milford. (Hodges Depo. at 20).  To the best of his knowledge, he simply completed the bottom of the subpoena document noting "good service" and turned it in. *Id*.

Woerner testified she does not recall having any conversations which questioned the validity of the service of the subpoena. (Woerner Depo. at 75).

By registered letter dated November 30, 2000, Mechler contacted Woerner concerning the subpoena delivered to him on November 21, 2000.  Mechler reiterated that the subpoena was not addressed to him or to any individual or corporation of which he had knowledge. (Woerner Depo. at 55-58, Exh. FC2-3). Mechler went on to complain about the rude, unprofessional, and disruptive

behavior of the serving officers and requested an explanation for their behavior. The letter closes:

> Please find the subpoena in question enclosed as it is obviously not to any entity of which I have any knowledge.  If you feel that I have any obligation to your City for any liabilities due, please notify me in writing immediately and provide the statute you feel obligates me so I can properly evaluate and fulfill any such obligation in a timely fashion.
>
> /s/ Kurt Charles Mechler D.C.

(Woerner Depo. Exh. FC2-3).  Woerner admits she received this letter before issuing a complaint based on the subpoena. (Woerner Depo. at 57-58).

Woerner made an inquiry to the Secretary of State of Ohio for businesses utilizing the name "Health Plus." (Woerner Depo. at 132-36, Exh. FF2-16).  The inquiry returned a list of six businesses with "Health Plus" as part of their names, two located in Toledo, one in Gallipolis, one in Columbus, one in Cincinnati, and one in Union Township, Ohio. *Id*.  None of the listings is for a business entity entitled "Health Plus Medical, Inc." *Id*.  One listing was for "Health Plus Medical Management, Inc." with an agent/contact name of "Kurt C. Mechler." (Woerner Depo. at 135, Exh. FF2-16).  Woerner admitted this information was readily available to her as the tax administrator in order to determine the identity of the parties she needed to contact to effect the City's tax ordinance. (Woerner Depo. at 135).  However, she did not make the inquiry until January 2001.

9

In response to Mechler's letter, Woerner contacted the Milford Law Director, Michael Minniear, who advised that Mechler would have to "honor the subpoena." (Woerner Depo. at 58–59).

Mechler also contacted Law Director Minniear by letter dated December 15, 2000. (Mechler Depo. at 211–12, Exhs. P, Q). Mechler informed Minniear that he had received a communication from his office staff that Minniear was prepared to get a bench warrant for Mechler's arrest. Mechler informed Minniear that he had received no response to his November 30, 2000 letter to Woerner and reiterated that to his knowledge, the corporation was in full compliance. *Id.*

On December 18, 2000, Woerner issued a complaint to "Kurt C Mechler, Health Plus Medical Inc., 792 Eastgate South Drive, Cincinnati, Oh 45245–1500" stating that "KURT C MECHLER in the City of Milford and Clermont County, Ohio on or about December 6, 2000 Refuse (sic) to disclose to the Administrator any information with respect to the income or net profit of a taxpayer; or Failed to comply with the provisions of this chapter or any order or subpoena of the Administrator authorized hereby. . . ." (Woerner Depo. at 41, Exh. FC2–1). Woerner testified that she issues the complaint and takes it to the police department which types up the complaint, "do[es] the warrant," and serves the warrant. (Woerner Depo. at 41).

On December 19, 2000, Officer Hodges traveled to Mechler's Eastgate office to effect Mechler's arrest. En route, Hodges stopped at the Union Township Police

10

Department to advise them he would be making an arrest in their jurisdiction. A Union Township Police Officer accompanied Hodges to the Eastgate office. The following is Hodges' version of the events of that day: Hodges walked into the building and told a staff member why he was there. Shortly after that, Hodges observed Mechler exit a doorway out of a patient's room. When Mechler looked up and saw Hodges, Mechler made a brief dash for his office, which was out of sight. (Hodges Depo. at 27). Hodges followed Mechler. (Hodges Depo. at 28). He shouted down the hall that he had a warrant for his arrest. (Hodges Depo. at 29). Hodges testified that when an officer makes an arrest or serves a warrant, the method of service of the warrant is within the officer's discretion. (Hodges Depo. at 31). Hodges testified he had three options: (1) summon Mechler, giving him a court date; (2) take Mechler to the police department by making an arrest then issuing a citation for that misdemeanor offense; or (3) placing Mechler in custody at the jail. *Id.* Hodges testified that because he had already served a subpoena that was ignored by Mechler, he selected the second option to effect the arrest. (Hodges Depo. at 31). Hodges testified that based upon Mechler's prior actions of "doing nothing" in response to the subpoena left there on November 21, 2000, Hodges had no reason to believe that Mechler would appear in the City of Milford at another time. (Hodges Depo. at 32). Hodges placed Mechler in handcuffs and transported him to the Milford Police Department.

Hodges testified he has been trained to properly apply handcuffs to a suspect. (Hodges Depo. at 39). To the best of his knowledge, Hodges has never caused harm or damage by applying handcuffs and goes out of his way to make sure his prisoners "are in the most of comfort." (Hodges Depo. at 40). While transporting Mechler to the Milford Police Department, Hodges stopped the car and Officer Doughman checked the cuffs for proper application. (Hodges Depo. at 44). Upon removal of the handcuffs, Hodges did observe a red mark around both of Mechler's wrists. *Id*.

The following is Mechler's version of events: On December 19, 2000, at approximately 2:40 p.m., Mechler was treating a patient at his Eastgate office when he was interrupted by a co-worker and advised there were Milford Police Officers at the front counter demanding to see him. Mechler, through a staff member, requested the officers make an appointment or leave whatever documents they may have for him so he could attend to his professional responsibilities. As he was walking from one room to another, the officers entered the private area of the facility where medical treatment was being rendered and shouted that they were there to place him under arrest. Mechler requested that other arrangements be made since he still had patients waiting for treatment and he was the only doctor in the office that day. Officer Hodges stated they had a warrant for Mechler's arrest and were to take him into custody on sight. Mechler verbally objected to the legal basis for the arrest warrant, but stated he would offer

no physical resistence to the arrest.  Mechler also requested that he be permitted to telephone the Clermont County Sheriff "to be present to protect his rights." Mechler spoke with a deputy sheriff, explained the situation, and understood that the deputy would soon be en route to the office.  Officer Hodges then spoke with the deputy sheriff.  After the phone call was terminated, Hodges declared he had "had enough" and was "just going to take [Mechler] in."  Hodges then forced Mechler's left arm behind his back and placed handcuffs on his wrists.  Mechler reiterated he would not flee or physically resist the arrest and questioned the necessity of handcuffs.   Hodges stated it was the "rules" that Mechler be handcuffed since he was being placed under arrest.  Mechler states the cuffs were placed tightly on his wrists, causing him pain.  He was then transported to the Milford Police Department where the handcuffs were removed.  Mechler states his right hand had an indentation of approximately one quarter inch in depth and one inch to one and one-half inches long.  Mechler presents evidence that as a result of the handcuffing, he experienced weakness, numbness and persistent paresthesia, as well as neurological impairment of the right hand. (Doc. 64, Exh. E, Mechler Aff.; Doc. 64 at 39–42).

Mechler states that Hodges placed him in a room and ordered him to sit down.  Hodges  told Mechler he was going to get the necessary information and if Mechler failed to cooperate he would "haul" him out to the Brown County Jail. Mechler requested to see the warrant, to which Hodges yelled he was not going to

put up with any of Mechler's "shit," that he "was done" and going to haul Mechler out to Brown County.  Hodges left a copy of the warrant and left the room stating "you're done, you're done."  Hodges returned after fifteen minutes.  He told Mechler that he must post a bond or Mechler would be jailed until the next available Mayor's court on January 3, 2001.  Mechler stated he would cooperate in giving Hodges the information he requested.  While completing the necessary paperwork, Hodges told Mechler, "I read your letter, Doc–t–o–r–r–r . . . you should use spell check next time, Doc–t–o–r–r. . . .  I passed it around and we laughed, Doc–t–o–o–r–r . . . .  I read what you wrote about me, Doc–t–o–r–r–r . . . rude and unprofessional . . . try spell check, Doc–to–r–r–r . . . ."  Mechler did not reply, and requested to use the telephone to make arrangements to secure his release.  Shortly thereafter, Mechler posted bond and was released. (Doc. 64, Exh. E, Mechler Aff.).

On December 29, 2000, Ron Crider, a Milford Police Officer, was on patrol in the City of Milford when he received a tip from a fellow officer that Mechler had a suspended driver's license and was leaving the Milford Police Department. (Crider Depo. at 14).  Crider testified that a computer search of the license plate of the vehicle leaving the Milford Police Department showed the vehicle was registered to a female by the last name of Mechler.  *Id.*  Crider observed that the driver of the car was male, and testified that he knew from a previous warrant that Mechler was a white male.  *Id.*  Based on these facts, Crider stopped the car.

Crider determined that Mechler was in fact the driver of the vehicle and through a search of the Mobile Data Terminal verified that he was still driving under a suspended license. (Crider Depo. at 16). Crider testified that he noted no other traffic violations by Mechler prior to effecting the traffic stop. (Crider Depo. at 17–18). Mechler protested that any previous citations had been resolved and his license should not be suspended. (Doc. 20, Exh. K)[3]. Crider testified that the City of Milford ordinance required the arrest of an individual driving under a suspended license and impoundment of the vehicle. (Crider Depo. at 25–26). Crider declined Mechler's request to leave the car on the road to avoid impoundment. *Id.* Mechler states that Crider proceeded to pat him down for weapons, but did not handcuff him. (Doc. 20, Exh. K). Mechler was arrested and transported to the Milford Police Department. (Crider Depo. at 28). The car was later searched and towed. Apparently, Mechler's license had been suspended as a result of an infraction in Kentucky and, because of a compact agreement between the states, Ohio had a compact violation suspension on Mechler's driver's license. (Doc. 20, Exh. K; Mechler Depo. at 31–32). It appears the Kentucky infraction had been paid, but the Ohio license bureau was not notified. (Mechler Depo. at 31–32). Mechler does

---

[3]Exhibit K is a three page statement by Mechler of the events surrounding the stop by Crider. This exhibit is incorporated by reference in plaintiff's verified amended complaint. Plaintiff's verified amended complaint (Doc. 20) has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment under Fed. R. Civ. P. 56(e). *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

15

not dispute that his driver's license was suspended at the time he was stopped by Crider. (Mechler Depo. at 161).

The charges against Mechler were ultimately dismissed. Mechler provided Woerner with the information she sought concerning Health Plus Medical Management, Inc., the corporation actually doing business in the City of Milford, and any tax obligations or issues were resolved. (Woerner Depo. at 47, 49).

Mechler filed this federal lawsuit on December 18, 2002 (Doc. 1), and an amended complaint on January 30, 2004. (Doc. 20). He alleges defendants breached their Article VI Oath of Office by denying his constitutionally secured rights in person and property; knowingly obtained, disclosed and used "highly restricted personal information" (social security number) without Mechler's express consent; committed "breach of oath through act/agency;" made false arrests and seizure of person and property without due process; and committed libel. (Doc. 20 at 8–12). Plaintiff seeks damages.

## MECHLER'S FEDERAL LAW CLAIMS

### I. Breach of Oath of Office and "breach of oath through act/agency"

Article VI, Clause 3 of the United States Constitution provides in relevant part that "all executive and judicial officers, both of the United States and of the several states, shall be bound by Oath or Affirmation, to support this Constitution." Plaintiff alleges that defendants, by their actions, have breached their respective

oaths of office as described in Article VI.    Neither the Constitution nor statutes which require state or federal officials to take oaths of office create a private cause of action for acting contrary to the Constitution.  *See, e.g., Lewis v. Green*, 629 F. Supp. 546, 554 n.14 (D.D.C. 1986); *Simon v. Hollis*, 1997 W.L. 542721, *6 (D. Kansas 1997).  Therefore, defendants are entitled to summary judgment on this claim.

## II.  Use of social security number without consent

Plaintiff alleges that defendant Woerner obtained and used, without plaintiff's permission "highly restricted personal information," to wit, his social security number, in violation of the  Driver's Privacy Protection Act (DPPA), 18 U.S.C. § 2721 et seq. (Doc. 44).  The DPPA's regulatory scheme restricts the States' ability to disclose a driver's personal information without the driver's consent. *Reno v. Condon*, 528 U.S. 141, 144 (2000).  The DPPA provides, in relevant part:

> A State department of motor vehicles, and any officer, employee, or contractor thereof, shall not knowingly disclose or otherwise make available to any person or entity:
>
> (1) personal information, as defined in 18 U.S.C. 2725(3), about any individual obtained by the department in connection with a motor vehicle record, except as provided in subsection (b) of this section; or
>
> (2) highly restricted personal information, as defined in 18 U.S.C. 2725(4), about any individual obtained by the department in connection with a motor vehicle record, without the express consent of the person to whom such information applies, except uses permitted in subsections (b)(1), (b)(4), (b)(6), and (b)(9). . . .

18 U.S.C. § 2721(a).  "Permissible uses" of personal information include "use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions, 18 U.S.C. § 2721(b)(1). Plaintiff's claim under the Driver's Privacy Protection Act fails because the use and disclosure that occurred in this case meets the exception set forth in the statute. Defendant Woerner's use of his social security number was in conjunction with her duties as Tax Administrator in verifying his identity.  Any use of Mechler's social security number by Hodges and Crider was in conjunction with their duties as law enforcement officers and likewise meets the statutory exception.  Moreover, Mechler may not maintain a DPPA claim for improper obtainment under 18 U.S.C. § 2724(a) without alleging an accompanying impermissible use.  *See Russell v. ChoicePoint Services, Inc.,* 300 F. Supp.2d 450, 455 (E.D. La. 2004).  Therefore, defendants are entitled to summary judgment on this claim.

To the extent plaintiff alleges defendants' use of his social security number violates the Privacy Act, 5 U.S.C. § 552a, he fails to state a claim for relief because the Privacy Act applies solely to federal agencies, and not to individuals or local or state agencies.  *See Schmitt v. City of Detroit*, 395 F.3d 327 (6th Cir. 2005).  *See also Dittman v. California*, 191 F.3d 1020, 1026 (9th Cir. 1999), *cert. denied*, 530 U.S. 1261 (2000).

18

To the extent plaintiff may be alleging defendant Woerner violated the Federal Wiretap Act by using the internet to obtain his credit report, he fails to allege specific facts showing a violation of the Act. *See* 18 U.S.C. § 2511(1); 18 U.S.C. § 2520(a). In any event, such a claim is barred by the two-year limitations period for federal wiretap claims. *See* 18 U.S.C. § 2520(e). Accordingly, defendants' motion for summary judgment should be granted on this claim.

## III. False arrests, seizure of person and property without due process, and excessive use of force

Defendants Woerner, Hodges and Crider contend they are entitled to qualified immunity in this matter. Government officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Black v. Parke*, 4 F.3d 442, 444 (6th Cir. 1993), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001).

Once a defendant raises a qualified immunity defense, the plaintiff must satisfy a three pronged analysis. *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003); *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc). First, the Court must determine whether the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred. *Id. See Saucier,* 533 U.S.

at 201.  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier,* 533 U.S. at 201.  Second, the Court determines whether the violation involved a clearly established constitutional right of which a reasonable person would have known. *Id.; Feathers*, 319 F.3d at 848; *Williams*, 186 F.3d at 691. Third, the Court must examine  whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Feathers*, 319 F.3d at 848; *Williams*, 186 F.3d at 691.

A constitutional right is "clearly established," thereby precluding the application of qualified immunity, if "the law [is] clear in regard to the official's particular actions in the particular situation." *Black*, 4 F.3d at 445, quoting *Long v. Norris*, 929 F.2d 1111, 1114 (6th Cir.), *cert. denied*, 112 S.Ct. 187 (1991).  *See also Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir.), *cert. denied*, 116 S.Ct. 524 (1995). "This  inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition. . . ." *Saucier,* 533 U.S. at 201.  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202, quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).   "The relevant, dispositive inquiry in determining whether a right is clearly established is whether

it would be clear to a reasonable [official] that his conduct was unlawful in the situation confronted." *Id.*

### A. Defendants Woerner and Hodges

Mechler claims that Woerner's issuance and Hodges' service of the subpoena on November 21, 2000 violated his Fourth Amendment rights. He asserts Hodges entered into a private area of the facility without a warrant or authorization and that the method of service of the subpoena was unreasonable and unconstitutional. The Court does not reach the merits of this claim because it is barred by the applicable statute of limitations. Limitations periods in § 1983 suits are to be determined by reference to the appropriate state statute of limitations and the coordinate tolling rules. *Hardin v. Straub*, 490 U.S. 536, 539 (1989), citing *Board of Regents, University of New York v. Tomiano*, 446 U.S. 478, 484 (1980). The appropriate statute of limitations for § 1983 civil rights actions arising in Ohio is contained in Ohio Rev. Code § 2305.10, which requires that actions for bodily injury be filed within two years after their accrual. *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989).

Although state law provides the statute of limitations in a § 1983 action, federal law governs the question of when that statute of limitations begins to run. *Sevier v. Turner*, 742 F.2d 262, 272–273 (6th Cir. 1984). The statute of limitations commences to run when the plaintiff knows or has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence.

*Id.*  In the instant case, therefore, plaintiff's cause of action accrued on November 21, 2000, the date Hodges served the subpoena.   The statute of limitations expired on November 21, 2002, two years later.  Mechler filed his complaint on December 18, 2002.  Accordingly, this claim was filed after the expiration of the statute and should therefore be dismissed.

Next, Mechler claims that Woerner and Hodges violated his constitutional rights in connection with his arrest on December 19, 2000.  Mechler claims that the December 19, 2000 arrest was unconstitutional because the underlying basis for the arrest warrant was false and the arrest was not supported by probable cause. Following the three-step procedure for determining qualified immunity, the Court must first address whether, viewing the facts in the light most favorable to plaintiff, there was probable cause to arrest Mechler on December 19, 2000.

The Fourth Amendment requires that warrants be issued only upon a showing of probable cause. *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003), citing *Greene v. Reeves*, 80 F.3d 1101, 1105 (6th Cir. 1996).   Generally, investigators and police officers are entitled "to rely on a judicially secured warrant for immunity from a § 1983 action for illegal search and seizure unless the warrant is so lacking in indicia of probable cause that official belief in the existence of probable cause is unreasonable." *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989), citing *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986).  A facially valid arrest warrant may be challenged if it was obtained by omissions of facts

which would affect the probable cause determination. *Lopez v. Ruhl*, 584 F. Supp. 639, 645 (W.D. Mich.1984), citing *United States v. Lefkowitz*, 618 F.2d 1313, 1317, n. 3 (9th Cir. 1980); *United States v. Dennis*, 625 F.2d 782 (8th Cir. 1980). "[A]n officer cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant." *Yancey v. Carroll County, Ky.*, 876 F.2d 1238, 1243 (6th Cir. 1989). An officer or investigator "may be held liable under § 1983 for making material false statements either knowingly or in reckless disregard for the truth to establish probable cause. . . ." *Vakilian*, 335 F.3d at 517, citing *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999). "To overcome an officer's entitlement to qualified immunity . . . a plaintiff must establish: (1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause." *Vakilian*, 335 F.3d at 517, citing *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989). "In other words, [the plaintiff] must show that the judge would not have issued the warrant without the allegedly false material." *Vakilian*, 335 F.3d at 517. *See also Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)(trial court must disregard the affidavit's false material and then determine if remaining content is sufficient to establish probable cause). An omission is made with reckless disregard for the truth where the officer leaves out information that a reasonable

person would have known was the kind of matter a judge would want to know in determining whether probable cause exists for the arrest. *Wilson v. Russo*, 212 F.3d 781, 786–88 (3d Cir. 2000); *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir.1993).  If an officer intentionally, knowingly or recklessly makes material omissions in his showing to the judge, probable cause may be challenged, and if found lacking, liability may lie under § 1983.

In the instant case, the information contained in the complaint prepared by Woerner and presented to the magistrate, when viewed in isolation, appears to supply probable cause for an arrest warrant for a "Kurt Mechler, Health Plus Medical Inc." for that individual's failure to comply with the reporting and disclosure requirements of the Milford tax ordinance.  The problem here, however, is the complaint was based on a subpoena duces tecum directed to "Curt Mechler, Health Plus Medical Inc."  It is undisputed that plaintiff Mechler has never been known by the name "Curt Mechler" and has no association with any company or corporation by the name of "Health Plus Medical Inc."  While Woerner subsequently discovered several companies registered and doing business in Ohio that included the term "Health Plus" in their name, it is undisputed that no corporation by the name of "Health Plus Medical Inc." was registered by the State of Ohio or that plaintiff Mechler was the statutory agent for such corporation.   While an arrest warrant that correctly names the person to be arrested is generally considered constitutionally sufficient and need not contain any additional identifying

information, *Powe v. City of Chicago*, 664 F.2d 639, 645 (7th Cir.1981); *West v. Cabell*, 153 U.S. 78 (1894),  an arrest warrant that incorrectly names the person to be arrested will usually be deemed insufficient to satisfy the Fourth Amendment's particularity requirement unless it includes some other description of the intended arrestee that is sufficient to identify him. *Powe,* 664 F.2d at 645, *West,* 153 U.S. at 85-86.  The warrant here was based on a subpoena duces tecum and, in turn, a complaint, directed toward the supposed statutory agent of a non-existent corporation. The defective warrant was thus insufficient to effectuate an arrest of Mechler under the Fourth Amendment. *Id*.

Defendants contend that even if a mistake was made in the spelling of Mechler's name or the name of the company doing business in Milford, such a mistake was an honest one and, in any event, defendants are entitled to rely on the warrant approved by a neutral magistrate.

As indicated above, a police officer is generally entitled to rely on a facially valid warrant in effecting an arrest.  However, when the facts show there are reasons to believe the warrant is not supported by probable cause or was obtained by omissions of facts which would affect the probable cause determination, the officer will not be insulated from liability by relying on such warrant. *Malley*, 475 U.S. at 344-45.  The magistrate's issuance of a warrant in this matter does not establish that Hodges' actions in arresting Mechler pursuant to the warrant were per se objectively reasonable.  Mechler has presented evidence that indicates the

warrant was based on false information and that facts material to the probable cause determination were withheld from the magistrate. The basis for the complaint upon which the warrant is premised is a subpoena which on its face is addressed to neither plaintiff "Kurt" Mechler or any company or entity with which he is associated. Rather, "Curt Mechler, Health Plus Medical Inc." was the name set forth in the subpoena. As indicated above, no corporation or entity by the name of "Health Plus Medical Inc." was doing business at the Milford address in question or at the Eastgate address where the subpoena was delivered. Neither "Kurt Mechler" nor "Health Plus Medical Management, Inc." was named in the subpoena served on November 21, 2000. Thus, the probable cause finding for an arrest cannot be premised on any alleged failure of "Kurt Mechler" or "Health Plus Medical Management, Inc." to appear before the Tax Administrator on December 6, 2000 or to disclose or comply with Milford's tax ordinances.[4] While defendants downplay what they view as a misspelling of Mechler's first name and business on the subpoena, the additional information that was omitted from the complaint and therefore not considered by the magistrate were facts which a magistrate would want to know in issuing an arrest warrant: Mechler's protestation at the time of service of the subpoena that he was not the individual named in the subpoena;

---

[4]In this sense, ***Baker v. McCollan***, 443 U.S. 137 (1979), is not to the contrary and distinguishable. McCollan was arrested based on a case of mistaken identity, but did not attack the validity of the warrant listing the wrong name upon which he was arrested. His sole challenge was to the sheriff's intentional failure to investigate whether the wrong man had been imprisoned *after* he was incarcerated. Here, Mechler challenges the very basis for the arrest warrant which was premised on a facially defective subpoena.

26

Mechler's statement at that same time that no company by the name of Health Plus Medical Inc. did business at the location at which the subpoena was delivered; Mechler's letter to the Tax Administrator advising her that he was not the individual named, that the subpoena was addressed to no business or corporation of which he had any knowledge, and his request that she advise him whether he has any tax obligation to the City of Milford so he could meet his obligations; and Mechler's letter to the Milford law director advising him of no response to his letter to the Tax Administrator protesting the subpoena and advising him that to his knowledge his corporation was in full compliance.  Mechler's evidence shows he personally informed Hodges that he was not the individual named in the subpoena and that Health Plus Medical Inc. was not the entity at that location.  Hodges' statement, "I'll be back on December 7th, Doc" suggests Hodges expected Mechler not to appear at the Tax Administrator's office on December 6 and to expect another visit from Hodges.  In addition, Hodges' statements to Mechler subsequent to his physical arrest while at the police station indicate Hodges had previously read Mechler's letter to the Tax Administrator protesting the service of the subpoena and the police officers' "rude and unprofessional" actions prior to effecting Mechler's arrest on December 19.  Also, Hodges admitted he simply signed the subpoena document showing "good service" and did nothing to indicate Mechler's protestations to the contrary to the Tax Administrator or magistrate. Taken as a whole, the omitted information was "the kind of thing the [magistrate]

would wish to know" when issuing an arrest warrant. *Jacobs*, 986 F.2d at 1235. This omitted information is "material" because the magistrate would not have had probable cause to issue the warrant in view of the information that neither Mechler nor the actual corporation he worked for was served with a subpoena duces tecum and the complaint upon which the warrant is based names a non-existent corporation. In essence, the arrest warrant was based on Mechler's failure to comply with a subpoena issued to a non-existent corporation. In other words, if the magistrate were presented with the above facts that were omitted, the "corrected" warrant and complaint upon which it was based would not have established probable cause to arrest Mechler on December 19, 2000. *Vakilian*, 335 F.3d at 517.

Aside from defendant Woerner's involvement with Mechler's December 19th arrest[5], there is additional evidence presented by Mechler which tends to show defendant Hodges acted in the absence of good faith in carrying out the arrest of Mechler in this matter. With the exception of Mechler's letter to the law director,

---

[5]While defendant Woerner argues she is entitled to qualified immunity because she relied on the advice of the Milford law director prior to issuing the complaint for Mechler's arrest on December 18, 2000, defendant Woerner has failed to establish extraordinary circumstances supporting a claim of qualified immunity on this basis. *See Mineer v. Call*, 993 F.2d 1547, 1993 W.L. 144536, at *6 (6th Cir. 1993) (unpublished), citing *V-1 Oil Co. v. Wyoming*, 902 F.2d 1482 (10th Cir.1990). For advice of counsel to rise to the level of extraordinary circumstances, a defendant must satisfy several factors, including how unequivocal, and specifically tailored to the particular facts giving rise to the controversy, the advice was, whether complete information had been provided to the advising attorney(s), the prominence and competence of the attorney(s), and how soon after the advice was received the disputed action was taken. *V-1 Oil Co.*, 902 F.2d at 1488-89**.** *See also Buonocore v. Harris*, 134 F.3d 245, 252-53 (4th Cir. 1998)(reliance on counsel's advice is a factor in whether a defendant has demonstrated extraordinary circumstances, but is not alone enough). Defendant Woerner has made no attempt to show how the circumstances of this case meet those factors. Therefore, the Court must reject this defense.

28

Hodges had personal knowledge of the information that was not presented to the magistrate upon issuance of the arrest warrant. Hodges testified it was within his discretion to (1) summon Mechler, giving him a court date; (2) take Mechler to the police department by making an arrest then issuing a citation for that misdemeanor offense; or (3) place Mechler in custody at the jail. When asked why he chose to arrest Mechler as opposed to simply issuing a summons, Hodges testified that because Mechler did "nothing" in response to the subpoena, Hodges did not expect him to comply with the subpoena and chose to make an arrest. A reasonable jury could determine that Hodges' decision to arrest Mechler, as opposed to taking the lesser action of summoning him for a court date, was not based on a good faith belief that Mechler had failed to comply with the subpoena duces tecum, but rather was motivated by something other than good faith. Mechler's evidence shows Hodges knew Mechler did not do "nothing" in response to the subpoena and that in fact Mechler issued verbal and written protestations in response to the subpoena. Mechler's evidence also shows that Hodges knew about Mechler's complaints to Woerner about Hodges' behavior on the day the subpoena was served and that he threatened to "haul" Mechler out to the Brown County Jail if he did not cooperate. Mechler's evidence also shows that Hodges conduct during the arrest exhibited something other than good faith: Hodges arrived at Mechler's office during business hours while patients were in the facility, shouted he had a warrant for Mechler's arrest, handcuffed and escorted Mechler

out of the office during business hours, and refused to allow Mechler to make alternate arrangements given he was the only doctor at the facility that day.

This evidence tends to show that Hodges' arrest of Mechler was based on a warrant he knew omitted material information and supports a finding of a reckless disregard of the known facts by Hodges. Thus, Hodges reliance on the sufficiency of the arrest warrant and the magistrate's probable cause determination does not insulate him from liability in this matter given the facts known to him at the time he arrested Mechler on December 19, 2000. Such reliance was not objectively reasonable." *United States v. Leon*, 468 U.S. 897, 922 (1984). The question for the Court is "whether a reasonably well-trained officer would have known that the warrants were illegal despite the magistrate's authorization." *Id*. at 922 n. 23. *See also Malley v. Briggs*, 475 U.S. at 344-345. Mechler's evidence, if believed, shows Hodges knew facts which would have informed a reasonable officer that he was executing an arrest warrant for the wrong person. The evidence viewed in the light most favorable to plaintiff and measured objectively show that Hodges would have clearly understood that the arrest of Mechler was not done in good faith and not supported by probable cause.

Mechler's right to not be arrested based on a complaint containing false or misleading information was clearly established at the time of his arrest. *See Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999); *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989). Mechler has made a substantial showing that defendants Woerner

and Hodges showed a reckless disregard for the truth by their actions in this matter, and that the allegedly false or omitted information upon which the arrest warrant was based was material to the finding of probable cause. *Vakilian*, 335 F.3d at 517.  Because Mechler has offered sufficient evidence showing his arrest on December 19, 2000 was objectively unreasonable under the facts of this case, defendants Woerner and Hodges are not entitled to qualified immunity.

The Court, at this juncture of the proceedings, does not find that defendants Woerner and Hodges actually violated Mechler's constitutional rights.   As discussed above, examining the facts in the light most favorable to Mechler indicates that genuine issues of material fact exist as to whether Woerner's issuance of the complaint and Hodges' arrest of Mechler based on that complaint were objectively unreasonable in light of the relevant circumstances, including the other information they possessed.  *See Malley*, 475 U.S. at 345.  On the other hand, a reasonable jury could also believe that Woerner's issuance of the complaint and Hodges' service of the warrant and arrest of Mechler were based on a reasonable belief that Mechler was the person involved despite the misspelling of his name and the similar, albeit incorrect, name of the corporation on the subpoena and warrant.  A jury could also believe that defendants' actions grew out of exasperation with what they perceived to be Mechler's failure to cooperate with Milford authorities rather than out of any ulterior motive.   While a jury may ultimately believe defendants Woerner and Hodges held such a good faith belief,

31

this issue is one for the fact-finder at trial.  Therefore, summary judgment should be denied for both parties at this juncture on Mechler's Fourth Amendment claim.

Mechler also claims that Hodges' use of handcuffs on the date he was arrested amounts to an excessive use of force in violation of his constitutional rights.  Mechler does not allege that Hodges used excessive force in applying the handcuffs to him, but rather that the handcuffs were applied too tightly resulting in injury to his wrist.  In *Burchett v. Kiefer*, 310 F.3d 937 (6th Cir. 2002), the Sixth Circuit found:

> The tightness of the handcuffs themselves causes greater concern. The right to be free from "excessively forceful handcuffing" is a clearly established right for qualified immunity purposes, *Kostrzewa v. City of Troy*, 247 F.3d 633, 641 (6th Cir. 2001), and applying handcuffs [too] tightly [can] certainly raise[ ] concerns of excessive force. Our precedents allow the plaintiff to get to a jury upon a showing that officers handcuffed the plaintiff excessively and unnecessarily tightly and ignored the plaintiff's pleas that the handcuffs were too tight. *See Id*.; *Martin v. Heideman*, 106 F.3d 1308, 1310, 1313 (6th Cir. 1997) (reversing directed verdict in favor of defendants on excessive force claim when plaintiff's hands were injured after thirty-five minutes in tight handcuffs).

*Burchett*, 310 F.3d at 944-45.  The Court must consider several factors in determining the objective reasonableness of an officer accused of using excessive force.  These include the severity of the crime alleged, whether the suspect poses an immediate threat to the safety of officers or others, and whether the suspect is actively resisting or attempting to evade arrest by flight.  *Solomon v. Auburn Hills Police Dept.*, 389 F.3d 167, 174 (6th Cir. 2004), citing *Burchett*, 310 F.3d at 944.

In the instant case, Mechler was being arrested for failing to comply with an administrative subpoena duces tecum concerning taxes allegedly owed to the City of Milford, a misdemeanor.  There is no evidence that Mechler posed any threat to the safety of the arresting officers or others.  In addition, there is no evidence that Mechler physically resisted the arrest or was uncooperative.  The issue of fact in this matter was whether the handcuffs were applied too tightly and whether Hodges ignored Mechler's complaints that the handcuffs were painful.

Mechler presents evidence that the right handcuff was "placed about one inch distal to [his] wrist and clamped down very uncomfortably on the dorsum of [his] hand." (Doc. 64, Exh. E).  He was taken from his office and placed in the back seat of a Milford police cruiser.  At one point, the cruiser was stopped en route to the police station so Mechler's seat belt could be fastened.  Mechler asked if there was a better way to sit as the position he was in made the cuffs uncomfortable. Mechler attempted to change his position, but the pain in his hand continued to worsen.  Mechler again complained that the cuffs were very painful.  Hodges admits that Mechler complained about the handcuffs causing him pain during the transport to the station. (Hodges Depo. at 42).  Hodges states he made sure the cuffs were properly applied to Mechler and double locked so they would not "close up" on Mechler. (Hodges Depo. at 42).  Hodges and the other officer accompanying him conversed about the cuffs and Hodges stated they were double locked and applied loosely. (Doc. 64, Exh. E).  The handcuffs were not removed until Mechler

33

and the officers arrived at the station.  Mechler showed the resulting indentation which was noticeably void of blood to Hodges who replied that it would go away. (Doc. 64, Exh. E).  Mechler presents evidence that as a result of the handcuffing, he experienced weakness, numbness and persistent paresthesia, as well as neurological impairment of the right hand. (Doc. 64, Exh. E, Mechler Aff.; Doc. 64 at 39–42).

Viewing the facts in the light most favorable to Mechler, the Court finds that no reasonable officer would find that the circumstances surrounding Mechler's arrest required the use of force that was used here in the application of the handcuffs.  Defendant Hodges is therefore not entitled to qualified immunity under the circumstances of this case.  Because issues of fact remain as to whether the handcuffs were applied unnecessarily tightly and whether Hodges ignored Mechler's complaints that the handcuffs were too tight, summary judgment should not be granted for either party on Mechler's excessive force claim.

To the extent defendants seek summary judgment on plaintiff's damages claims, Mechler has presented sufficient evidence creating a genuine issue of fact on his claim for compensatory and punitive damages for resolution by a jury in this matter.

### B.  Defendant Crider

Plaintiff claims that defendant Crider's traffic stop and arrest on December 29, 2000 were without probable cause and violated Mechler's Fourth Amendment

rights.  It is well-established that law enforcement officials "may arrest a person without a warrant if they have probable cause at the time of the arrest to believe that the person has committed or is committing a crime." *United States v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir. 1996), citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964). A police offer lacking probable cause to arrest may "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *U.S. v. Sokolow*, 490 U.S. 1, 7 (1989), quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968).  "It is well settled that the *Terry* doctrine applies to investigative stops of a moving automobile." *United States v. Bentley*, 29 F.3d 1073, 1075 (6th Cir. 1994). Reasonable suspicion is a lower standard than probable cause. *United States v. Braggs*, 23 F.3d 1047, 1049 (6th Cir. 1994).  "Reasonable suspicion requires specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant the continued detention of a motorist after a traffic stop." *U.S. v. Smith*, 263 F.3d 571, 588 (6th Cir. 2001), citing *Terry*, 392 U.S. at 21. The Court must examine the totality of the circumstances in determining whether a seizure is supported by "specific and articulable facts that give rise to a reasonable suspicion of criminal activity." *United States v. Palomino*, 100 F.3d 446, 449 (6th Cir. 1996).  Reasonable suspicion may be based upon police officers' own observations or upon the collective knowledge of other officers. *Braggs*, 23 F.3d at 1049.  Reasonable suspicion requires that the information be reliable not only

35

in its tendency to identify a particular person, but also in its assertion of illegality. *Florida v. JL*, 529 U.S. 266, 272 (2000).

In the instant case, defendant Crider received a radio transmission from a fellow officer that Mechler had a suspended driver's license and was leaving the Milford Police Department. Crider's computer search of the license plate of the vehicle leaving the Milford Police Department showed a vehicle registered to an individual by the last name of Mechler. Crider observed the car was being driven by a male and knew from a previous warrant that Mechler was a white male. *Id*. Clearly, these facts, taken together, constitute reasonable suspicion to justify the stop. Based on the totality of these facts, Crider could lawfully stop Mechler's vehicle and briefly detain him for investigatory purposes. Officer Crider had a reasonable basis for suspecting that Mechler lacked a valid license at the time he was driving and therefore was permitted to stop Mechler briefly to determine whether the crime was still being committed. *U.S. v. Sandridge*, 385 F.3d 1032, 1036 (6th Cir. 2004), *cert. denied*, 2005 W.L. 127006 (2005). Crider's subjective intent or actual motivation for making the traffic stop is irrelevant to the constitutionality of the stop. *United States v. Bailey*, 302 F.3d 652, 657 (6th Cir. 2002).

At this point, Crider confirmed Mechler's identification and the fact that Mechler was driving with a suspended license via a computer check. "[I]n a valid traffic stop, an officer can request a driver's license, registration or rental papers,

run a computer check thereon, and issue a citation." *United States v. Hill*, 195 F.3d 258, 269 (6th Cir. 1999). This information gave Crider  probable cause to arrest Mechler.  The Supreme Court has held that when an officer has probable cause to believe that an individual has committed even a very minor criminal offense, he may, without violating the Fourth Amendment, arrest the offender.  *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001)(petitioner's warrantless arrest for violating Texas seat belt law not unconstitutional where officer had probable cause to believe petitioner committed crime in his presence).   *See also United States v. Reed*, 220 F.3d 476 (6th Cir. 2000), *cert. denied*, 531 U.S. 1103 (2001)(probable cause supported warrantless arrest for misdemeanor trespassing).

The fact that Mechler's Kentucky infraction which led to the suspension of his license had actually been resolved at the time of his arrest by Crider does not change this result.  Even if the Court were to assume that the arrest was unlawful under the Fourth Amendment, the Court would conclude that Crider made a reasonable mistake of fact in presuming that Mechler's license was suspended and is therefore protected by qualified immunity.  Based upon the undisputed facts, a prudent officer in Crider's position could have concluded that there was sufficient evidence to believe that Mechler had been driving under a suspended license.  A reasonable officer under the same circumstances as Crider, therefore, would have believed that the arrest was lawful.  Crider would thus be entitled to qualified immunity in this matter.

37

Mechler next asserts that the pat down frisk by Crider was extremely invasive and violated his constitutional rights. Because "[a] custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment . . . a search incident to the arrest requires no additional justification." *United States v. Robinson*, 414 U.S. 218, 235 (1973). "It is the fact of the lawful arrest which establishes the authority to search, and . . . in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment. *Id.* (Where officer had probable cause to arrest defendant for operating a motor vehicle after revocation of operator's permit and effected a full-custody arrest, search of defendant's person without search warrant, inspection of crumpled cigarette package found on defendant's person and seizure of heroin capsules found in the package were permissible even though officer did not indicate any subjective fear of defendant and did not suspect that defendant was armed.). *See also Gustafson v. Florida*, 414 U.S. 260, 266 (1973) (upon arresting petitioner for offense of driving automobile without possession of a valid operator's license, and taking him into custody, officer was entitled to make a full search of petitioner's person incident to that lawful arrest). A police officer need not assess the likelihood that the individual arrestee is possessing a weapon or concealing evidence but may undertake a "full search" of an arrested person aimed toward the discovery of weapons, instruments of escape, and evidence that

38

could otherwise be concealed or destroyed. *Id.* Accordingly, Crider's search of Mechler which was conducted incident to his arrest did not violate Mechler's Fourth Amendment rights.

Mechler also takes issue with Crider's decision to have his vehicle impounded, instead of accepting Mechler's offer to leave the car in its lawfully parked space on the street and to make other arrangements to have the car removed. While this Court finds Mechler's suggestion to be a reasonable one under the circumstances, as a matter of Fourth Amendment jurisprudence Crider's refusal to accept the suggestion did not violate Mechler's constitutional rights. The Fourth Amendment does not require a police officer to allow an arrested person to arrange for another person to pick up his car to avoid impoundment. *See United States v. Hunnicutt*, 135 F.3d 1345, 1351 (10th Cir. 1998); *United States v. Agofsky*, 20 F.3d 866, 874 (8th Cir.), *cert. denied*, 115 S.Ct. 280 (1994); *United States v. Rodriguez–Morales*, 929 F.2d 780 (1st Cir. 1991), *cert. denied*, 502 U.S. 1030 (1992); *United States v. Duncan*, 763 F.2d 220, 224 (6th Cir. 1985). There is no requirement under the Fourth Amendment that police officers select the least intrusive way of fulfilling their community care taking responsibilities. *See Colorado v. Bertine*, 479 U.S. 367, 373–74 (1987). *Cf. United States v. Harvey*, 16 F.3d 109 (6th Cir.)(police lawfully exercised their discretion to impound stopped car in absence of any licensed driver to attend to it), *cert. denied*, 115 S.Ct. 258

39

(1994).  Therefore, Crider's impoundment of Mechler's vehicle did not violate Mechler's Fourth Amendment rights.

To the extent plaintiff claims defendant Crider's actions violated his due process rights under the Fourteenth Amendment, his claim is not well-taken.[6] While the Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities, in cases involving an intentional deprivation of property a plaintiff may not bring a § 1983 suit claiming a denial of procedural due process if adequate state remedies exist.  *See Hudson v. Palmer*, 468 U.S. 517, 533-36 (1984).  Mechler had not shown that his state remedies for redressing the alleged wrong are inadequate.  *See Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999).  Therefore, he has failed to establish his denial of due process claim as a matter of law.

Finally, Mechler argues that Crider's actions violated Milford's Police Department's Policy and Procedural Manual by arresting him and impounding the vehicle.  Assuming, arguendo, the verity of this assertion, it is immaterial for purposes of determining the validity of his arrest under the U.S. Constitution:

_____

[6]Mechler contends his Fifth Amendment due process rights have been violated in this matter.  The Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government. *See generally Sturgell v. Creasy*, 640 F.2d 843, 850 (6th Cir. 1981); *Walker v. Hughes*, 558 F.2d 1247, 1257 (6th Cir. 1977).  Because Mechler is proceeding pro se in this matter, his pleadings are liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers.  *See McNeil v. United States*, 508 U.S. 106, 113 (1993).  Thus, the Court will address his due process claim under the Fourteenth Amendment which does apply to defendants acting under color of state law as in this matter.

40

> [T]he appropriate inquiry for a federal court . . . is whether the arrest, search, or seizure violated the Fourth Amendment. The fact that the arrest, search, or seizure may have violated state law is irrelevant as long as the standards developed under the Federal Constitution are not offended. This is so because the exclusionary rule is only concerned with deterring Constitutional violations. Furthermore, this rule promotes uniformity in federal prosecutions. Indeed, it would be strange for the results of federal prosecutions to depend on the fortuity of the defendant's being arrested in one state or another.

*United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir.), *cert. denied*, 512 U.S. 1243 (1994).  Because the Court determines that Crider's actions in this matter are not unconstitutional, the fact that he may have violated the police officer's manual is of no consequence in establishing liability under the Fourth Amendment.  Accordingly, summary judgment should be granted for defendant Crider in this matter.

### C.  City of Milford

Mechler also seeks summary judgment against the City of Milford on the claims alleged in this case. When a § 1983 claim is made against a municipality, two distinct issues must be analyzed: 1) whether plaintiff's harm was caused by a constitutional violation; and 2) if so, whether the City is responsible for that violation. *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 120 (1992).  The only claims which survive summary judgment in this matter are Mechler's Fourth Amendment claim of unlawful arrest on December 19, 2000 against defendants Woerner and Hodges, and his Fourth Amendment excessive force claim against

41

defendant Hodges. Therefore, the Court must address whether the City of Milford may be held liable for these particular claims.

It is well-settled that a municipality may not be held vicariously liable for the actions of those it employs under Section 1983. *Gregory v. Shelby County, Tenn*., 220 F.3d 433, 441 (6th Cir. 2000), citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978). To establish his claims for relief against the City of Milford for his injuries, Mechler must show that "those injuries were the result of an unconstitutional policy or custom of the [City]." *Mathews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). *See Monell*, 436 U.S. at 694; *Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996). Municipalities cannot be held responsible for a constitutional deprivation unless there is a direct causal link between the municipal policy or custom and the alleged constitutional deprivation. *Monell,* 436 U.S. at 691; *Deaton v. Montgomery County, Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Mechler must identify the policy, connect the policy to the City, and show that the particular injury was incurred because of the execution of that policy. *Garner v. Memphis Police Dept*., 8 F.3d 358, 363-64 (6th Cir. 1993).

In the instant case, the City of Milford is entitled to summary judgment because the record is devoid of proof of a municipal policy or custom that caused defendants Woerner or Hodges to violate Mechler's civil rights. Mechler has not offered any evidence that the alleged reckless disregard for the truth in the course of seeking an arrest warrant and the force used by Hodges in handcuffing him

were pursuant to policy or a common practice in the City of Milford. Mechler's conclusory assertions and selective citations to the deposition of Woerner do not establish any official policy of the City of Milford. (Doc. 66 at 1-2). At most, Mechler has presented evidence of Fourth Amendment violations involving a single individual: himself. In the absence of a policy that is in itself unconstitutional, "considerably more proof than [a] single incident will be necessary . . . to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the unconstitutional deprivation." *Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985).

Mechler's cites to *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986), in support of his claim that the Milford Law Director's approval of the complaint leading to his arrest warrant established an official policy of the City of Milford. In *Pembaur*, the Supreme Court found that a municipality may be liable under § 1983 for the actions of its authorized policymakers "where--and only where--a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483. Such official must possess "final authority to establish municipal policy with respect to the action ordered." *Pembaur,* 475 U.S. at 481; *Holloway v. State of Ohio*, 179 F.3d 431, 437 (6th Cir. 1999). To determine whether final authority to make municipal policy is vested in a particular official, the court must resort to state law. *Feliciano*

*v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir.1993), *cert. denied*, 510 U.S. 826 (1993).  The record in the instant case is devoid of any city charter, code, or other codification of policy establishing the authority of the City of Milford Law Director.  In any event, it is clear that any decision by the Law Director did not constitute a policy decision attributable to the City.  While Woerner sought advice from the City's Law Director concerning the procedure to follow, the magistrate who ultimately approved the warrant for Mechler's arrest was the final municipal decision maker on whether such a warrant should be issued.  *See Liptak v. City of Niles*, No. 98–4078, 1999 W.L. 1045100 (6th Cir. Nov. 10, 1999).  The City of Milford cannot be held liable on the theory of *respondeat superior* simply because it employs defendants Woerner and Hodges and cloaks them with official authority to carry out its governmental functions.  Mechler has failed to present sufficient evidence creating an issue of fact for resolution by a jury in his claims against the City of Milford.  Accordingly, the City of Milford is entitled to summary judgment in this matter.

## MECHLER'S STATE LAW CLAIMS

To the extent Mechler alleges state law claims of libel, slander, malicious prosecution, false imprisonment, assault and battery (handcuffing), such claims are barred by Ohio's one–year statute of limitations. Ohio Revised Code § 2305.11 provides a one year statute of limitations for libel, slander, malicious prosecution, and false imprisonment.  Ohio Revised Code § 2305.111 sets forth a statute of

44

limitations of one year for assault and battery.  Mechler's complaint was filed more than one year after the incidents forming the basis of his complaint in this matter. Accordingly, his state law claims are barred by the statute of limitations and must be dismissed[7].

Upon a *de novo* review of the record, especially in light of the parties' objections, the Court finds that the parties' objections have either been adequately addressed and properly disposed of by the Judge or present no particularized arguments that warrant specific responses by this Court.  The Court finds that the Magistrate Judge has accurately set forth the controlling principles of law and properly applied them to the particular facts of this case and agrees with the Judge.

Accordingly, the Court hereby **ADOPTS** the foregoing Report and Recommendation of the United States Magistrate Judge (doc. no. 95).  Plaintiff's Rule 56 motion for partial summary judgment against defendant Woerner for her use of his social security number (Doc. 44) is DENIED; Plaintiff's Motion for Partial Summary Judgment against defendant Hodges (Doc. 64) is **DENIED**; Plaintiff's Motion for Partial Summary Judgment against defendant Crider (Doc. 65) is **DENIED**;  Plaintiff's Motion for Partial Summary Judgment against defendant City

---

[7]Because the Court recommends that Mechler's state law claims be dismissed on the basis they are barred by the applicable statute of limitations, the Court need not reach defendants' argument that state law provides them with immunity from the state law claims in this action.

of Milford (Doc. 66) is **DENIED**; Defendants' Motion for Summary Judgment (Doc. 63) is **GRANTED IN PART AND DENIED IN PART** as follows:

a.  Summary judgment is **GRANTED** for defendants on plaintiff's breach of oath of office and "breach of oath through act/agency" claims.

b.  Summary judgment is **GRANTED** for defendants on plaintiff's claims of unlawful use of his social security number.

c.  Summary judgment is **GRANTED** for defendants on plaintiff's Fourth Amendment claims concerning the service of the subpoena *duces tecum* on November 21, 2000.

d.  Summary judgment is **GRANTED** for defendant Crider on all claims.

e.  Summary judgment is **DENIED** on plaintiff's Fourth Amendment claims concerning his arrest on December 19, 2000 against defendants Woerner and Hodges.

f.  Summary judgment is **DENIED** on plaintiff's Fourth Amendment excessive use of force in handcuffing claim against defendant Hodges.

g.  Summary judgment is **DENIED** on plaintiff's damages claims.

h.  Summary judgment is **GRANTED** for defendant City of Milford on all claims.

i.  Summary judgment is **GRANTED** for defendants on plaintiff's state law claims.

The case shall proceed to trial on plaintiff's Fourth Amendment claims as previously scheduled by the Court (doc. no. 100).

**IT IS SO ORDERED.**

s/Herman J. Weber

Herman J. Weber, Senior Judge
United States District Court
